UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

_____

HERBERT J. FITZON,

    Plaintiff,                                               Case No: 14-cv-

v                                                             HON.

DEMATIC CORP., a foreign
profit corporation,

    Defendant.

Thomas A. Kuiper (P47285)
Frederick E. Mackraz (P52623)
Kuiper Orlebeke PC
Attorneys for Plaintiff
180 Monroe NW, Suite 400
Grand Rapids, MI 49503
(616) 454-3700
Kuiper@kolaw.com

**COMPLAINT AND JURY DEMAND**

There is no other pending civil action arising out of the transaction or
occurrence alleged in the Complaint

## JURISDICTION AND VENUE

1. Plaintiff, Herbert J. Fitzon is an individual who resides at 6405 Rapidfall Dr NE, Belmont, MI 49306.

2. Defendant Dematic Corp. is a Delaware Corporation with its headquarters in Luxembourg, but which engages in regular and systematic business in Kent County.

3. Plaintiff's complaint is for damages in excess of $75,000, exclusive of interest and costs, and therefore, this Court has jurisdiction pursuant to 28 USC § 1332 and § 1367.

4. Venue is proper in the Western District of Michigan.

## GENERAL ALLEGATIONS

5. On July 5, 1995, Plaintiff began employment with ElectroCom Automation, a unit of AEG ElectroCom International, Inc. ("AEI").

6. In 1996, AEI prepared to sell the company.

7. On July 1, 1996, AEI and Plaintiff executed an Executive Employment Agreement. (**Exhibit A**).

8. The Executed Employment Agreement stated AEI's "desire to provide security to [Plaintiff] and his family as an inducement to remain with the Company and not engage in competition with the Company." (*Id*. at 1).

9. The Executive Employment Agreement retained Plaintiff's services as Vice President, Corporate Human Resources.

10. The initial term of Plaintiff's employment was for a three year period of time, beginning on July 1, 1996 and ending on June 30, 1999. (*Id.* ¶ 2).

11. The Executive Employment Agreement also provided for annual, automatic renewal terms of one year from July 1 – June 30. (*Id.* ¶ 2).

1

12. The Executive Employment Agreement stated that either party could terminate the annual automatic renewal if "either of the parties notifies the other in writing of its intent not to renew this Agreement at least (6) months prior to its expiration…." (*Id*.).

13. Paragraph 2 of the Executive Employment Agreement is unambiguous.

14. After 1996, AEI sold to Siemens and ultimately renamed the company Siemens Dematic Postal Automation

15. Siemens Dematic Postal Automation later became Siemens Logistics and Assembly Systems, Inc.

16. On approximately January 1, 2006, Siemens Logistics and Assembly Systems, Inc. became Dematic Corp.

17. Prashant Ranade served as President and CEO of Dematic Corp.

18. On February 14, 2006, Prashant Ranade confirmed that Plaintiff's 1996 Executive Employment Agreement remained in effect with Dematic Corp. (**Exhibit B**).

19. In approximately August 2006, Dematic Corp. sold to Triton, a private equity company.

20. In December 2012, Triton sold Defendant to AEA/OTPP, a private equity consortium that continues to own and operate Defendant.

21. Plaintiff's 1996 Executive Employment Agreement remained in place through the date Defendant terminated him in 2014.

22. On November 4, 2013, Defendant hired a new employee, Henry E. "Dutch" Burfield II.

23. Defendant hired Dutch Burfield to serve in the position of Executive Vice President of Human Resources.

24. Prior to Mr. Burfield's hire, Plaintiff reported to Defendant's President and CEO, John Baysore.

25. After Defendant hired Dutch Burfield, Plaintiff's reporting relationship changed and he reported directly to Mr. Burfield.

26. From 1995 through 2013, Plaintiff's annual employment reviews reflected excellent job performance.

27. For 2013, Defendant's President and CEO evaluated Plaintiff's job performance and the performance review reflected no areas of concern or problems.

28. After Dutch Burfield began employment with Defendant, Plaintiff and Mr. Burfield clashed over the hiring of a foreign worker, Cesar Epifanio Valdes.

29. Plaintiff believed that various immigration issues prevented Defendant from legally hiring Mr. Valdes as Vice President, Safety and Environmental Health.

30. Dutch Burfield, on the other hand, informed Plaintiff that Defendant could hire this employee in such capacity.

31. Plaintiff informed Mr. Burfield that, in his opinion, it was a violation of immigration laws to hire Mr. Valdes as Vice President, Safety and Environmental Health.

32. Dutch Burfield informed Plaintiff that he was unhappy with Plaintiff and sought to downgrade Plaintiff's 2013 performance review that John Baysore had already prepared.

33. In January 2014, Defendant posted a new human resources position, Director of HR Global.

34. After Defendant initially posted the HR position as a Director level job, Defendant changed the position to a Vice President level HR position.

35. On January 17, 2014, Plaintiff emailed Dutch Burfield to inform him that Plaintiff would like to be considered for the Global VP of HR position that was posted internally. (**Exhibit C**).

36. On that same day, Dutch Burfield responded to Plaintiff's email to acknowledge it and to state that he would later respond to Plaintiff. (**Exhibit D**).

37. On January 20, 2014, Plaintiff and Dutch Burfield spoke by telephone.

38. During the January 20, 2014 phone call, Plaintiff asked Mr. Burfield about the Global VP of HR position and him filling that role.

39. During the January 20, 2014 phone call, Dutch Burfield informed Plaintiff that he had already identified Kelly Lawry as a candidate for the new position.

40. Dutch Burfield previously worked with Kelly Lawry.

41. Upon information and belief, Dutch Burfield contacted Kelly Lawry to inquire whether she would be interested in the new HR position with Defendant.

42. On January 20, 2014, Mr. Burfield informed Plaintiff that he intended to reduce Plaintiff's work responsibilities and that the new employee would take over most of Plaintiff's current job responsibilities. (**Exhibit E**).

43. On January 21, 2014, Defendant closed the internal job posting for the Global VP of HR position.

44. Dutch Burfield closed or informed another employee to close the job posting internally.

45. On January 22, 2014, Plaintiff wrote John Baysore and Dutch Burfield. (**Exhibit F**).

46. In that letter, Plaintiff provided Defendant with his written notice of intent not to renew the July 1, 1996 Executive Employment Agreement upon the anniversary date of July 1, 2015. (*Id.*).

47. Pursuant to the unambiguous language of Paragraph 2 of the Executive Employment Agreement, the employment term became fixed at two years from the Agreement Anniversary to which such notice was given. (**Exhibit A ¶ 2**).

48. On January 22, 2014, the Agreement Anniversary to which Plaintiff's notice applied was July 1, 2015; therefore the employment term ran through June 30, 2017. (*Id.*).

49. On January 28, 2014, Dutch Burfield called Plaintiff to inform him that Plaintiff's position would be eliminated and, therefore, Plaintiff's employment would be terminated.

50. On January 30, 2014, Dutch Burfield emailed Plaintiff to state that Defendant would not honor ¶ 2 of the Executive Employment Agreement. (**Exhibit G**).

51. On February 4, 2014, Dutch Burfield emailed Plaintiff and informed him that:

   A. Defendant would not honor Plaintiff's Employment Agreement;

   B. He had told Plaintiff during their January 28, 2014 phone call that Plaintiff's position was being eliminated; and

   C. Plaintiff's last day of employment would be February 21, 2014. (**Exhibit H**).

52. On February 7, 2014, Plaintiff wrote Dutch Burfield to reiterate his interest in the Global VP of HR position within Defendant. (**Exhibit I**).

53. On February 8, 2014, Dutch Burfield wrote Plaintiff and informed him that he would not consider Plaintiff for the open position due to "leadership behavioral reasons." (**Exhibit J**).

54. Defendant hired Kelly Lawry as Global VP of HR.

55. Kelly Lawry's hire date was February 17, 2014.

56. Upon information and belief, Defendant did not interview any other candidates besides Kelly Lawry.

57. Kelly Lawry has less business experience than Plaintiff.

58. Kelly Lawry has less experience in HR than Plaintiff.

59. Kelly Lawry has less education and formal degrees than Plaintiff.

60. Defendant formally terminated Plaintiff effective March 28, 2014. (**Exhibit K**).

61. Defendant agreed to pay Plaintiff only through June 30, 2014, not June 30, 2017. (*Id*).

62. On February 21, 2014, Defendant also terminated Plaintiff's interest in a December 28, 2012 Shareholder Agreement. (**Exhibit L**).

63. Upon information and belief, Defendant gave Kelly Lawry an interest in the Shareholder Agreement as part of her compensation package.

## COUNT I – BREACH OF CONTRACT

64. Plaintiff incorporates herein the paragraphs above.

65. Pursuant to the July 1, 1996 Executive Employment Agreement, Plaintiff is entitled to be paid through June 30, 2017.

66. Defendant's refusal to pay Plaintiff pursuant to the terms of the Executive Employment Agreement constitutes a breach of contract.

67. As a result of Defendant's breach of contract, Plaintiff has sustained damages.

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against Defendant in an amount in excess of $75,000, plus interest, costs, attorney fees, and any other relief that this Court determines if fair and equitable.


## COUNT II – AGE DISCRIMINATION

68. Plaintiff incorporates the paragraphs above herein.

69. As set forth herein, Defendant has discriminated against Plaintiff in violation of MCL 37.2101, *et seq*. and 29 U.S.C. § 621 *et. seq.*

70. Plaintiff was a member of a protected class based on his age.

71. Defendant discriminated against Plaintiff by refusing to consider him for a job transfer and new position for which he was well qualified and, ultimately, by terminating his employment.

72. Plaintiff was qualified for the position from which he was terminated.

73. Plaintiff was qualified for the position to which he applied.

74. Plaintiff's age was a motivating factor that made a difference in Defendant's decision to not consider him for a different position within the company and to terminate his employment.

75. Defendant hired a female worker in her mid-30's for the open position who was less qualified than Plaintiff.

76. Defendant's discriminatory actions have caused damage to Plaintiff.

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against Defendant for economic, non-economic, and exemplary damages, plus interest, costs, and attorneys' fees.

## COUNT III – RETALIATORY DISCHARGE IN VIOLATION OF PUBLIC POLICY

77. Plaintiff incorporates the paragraphs above herein.

78. Plaintiff believed that Defendant's attempts to hire Cesar Epifanio Valdes violated U.S. Immigration laws and regulations.

79. Plaintiff informed Defendant that he refused to violate Immigration laws and regulations in the hiring of Cesar Epifanio Valdes.

80. In response for refusing to participate in improper hiring practices, Defendant retaliated against Plaintiff by refusing to consider Plaintiff for a job transfer and, ultimately, terminating Plaintiff's employment.

81. As a direct and proximate result of Defendant's violation of law, as described herein, Plaintiff has suffered damages.

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against Defendant for economic and non-economic damages, interest, costs, attorneys' fees, plus whatever other relief this Court determines is fair and equitable.

KUIPER ORLEBEKE PC

Date: July 25, 2014   By:   /s/ Thomas A. Kuiper
     Thomas A. Kuiper (P47282)
     Frederick E. Mackraz (P52623)
     Attorneys for Plaintiff

## JURY DEMAND

Plaintiff demands a trial by jury.

KUIPER ORLEBEKE PC

Date: July 25, 2014   By:   /s/ Thomas A. Kuiper
     Thomas A. Kuiper (P47282)
     Frederick E. Mackraz (P52623)
     Attorneys for Plaintiff
     180 Monroe Avenue NW Ste 400
     Grand Rapids, MI 49503
     (616) 454-3700